# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ORLANDO RESIDENCE LTD., <br><br> Appellant, <br><br> v. <br><br> DAVID J. ALPERT and PAMELA VON HADEN-ALPERT, <br><br> Appellees. | Case No. 19-CV-1872-JPS <br><br><br> **ORDER** |

## 1. INTRODUCTION

On February 11, 2019, David J. Alpert and Pamela Von Haden-Alpert (collectively, the "Appellees") filed a Chapter 11 bankruptcy petition. *See In re David J. Alpert*, Case No. 19-21057-gmh (Bankr. E.D. Wis.). Orlando Residence Ltd. ("Appellant") timely filed a proof of claim ("Claim No. 7") in the amount of nearly $3.8 million dollars. In June 2019, Appellees filed an objection to Appellant's claim. On December 9, 2019, Judge G. Michael Halfenger of the United States Bankruptcy Court for the Eastern District of Wisconsin held an evidentiary hearing regarding Appellees' objection. Shortly thereafter, Judge Halfenger issued an oral ruling sustaining Appellees' objection to Appellant's claim, disallowing Appellant's claim in its entirety. Appellant timely filed a notice of appeal on December 20, 2019. Although Appellant requested that the Court hear oral argument of its appeal, upon consideration of the record and the parties' submissions in this case, the Court concludes that oral argument is unnecessary. For the reasons discussed in the balance of this Order, the Court affirms the decision of the bankruptcy court.

2.  **STANDARD OF REVIEW**

When adjudicating bankruptcy appeals, district courts apply a dual standard of review, reviewing the the bankruptcy court's findings of fact for clear error, and reviewing its conclusions of law *de novo*. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011) "If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, [the district court] will not reverse its factual findings even if [the district court] would have weighed the evidence differently." *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). Mixed questions of law and fact are subject to *de novo* review. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

3.  **FACTUAL & PROCEDURAL BACKGROUND**

    3.1  **Alpert Holdings, LLC**

Appellee David Alpert ("David Alpert") formed Alpert Holdings, LLC ("Alpert Holdings") on December 16, 2009. (Docket #4-1 at 11). Since the time of Alpert Holdings's formation, David Alpert was its sole manager. (*Id.* at 10). According to Alpert Holdings's income tax return for 2010, David Alpert did not initially contribute any capital to the company. (*Id.* at 12). David Alpert's ownership interest in Alpert Holdings has ranged from 95 to 100 percent. (*Id.* at 14). At the time David Alpert filed his Chapter 11 petition, he owned 100 percent of the company. (*Id.*)

From 2009 until 2014, Alpert Holdings was in the process of developing several business concepts. (*Id.* at 23). To date, some, but not all, of those concepts remain a part of the company (i.e., the company has not transferred those assets out of Alpert Holdings). (*Id.* at 99–100). Although he acknowledged their potential value, David Alpert testified that he has not continued developing such concepts because "it requires access to

capital to, um, to continue to work on them and Alpert Holdings has no access to capital." (*Id.* at 100).

### 3.2 Appellant's Judgment Against Alpert Holdings

Notably, Appellant does not have a judgment against either of the Appellees in their personal capacities. Rather, Appellant's claim, Claim No. 7, stems from a judgment Appellant has against Alpert Holdings. In September 2013, Appellant docketed a judgment in the Circuit Court of Ozaukee County for four million dollars against Kenneth E. Nelson and Susan B. Nelson.[1] (Docket #6 at 6, #6-1 at 51). On April 14, 2014, Appellant served an earnings garnishment notice upon Alpert Holdings, alleging that Kenneth Nelson was Alpert Holdings's employee. (Docket #6 at 6; #6-1 at 43). But, Alpert Holdings did not have any employees—it hired independent contractors. (Docket #4-1 at 126, 193).[2]

Alpert Holdings did not timely answer the garnishment and, in October 2014, the circuit court entered a default judgment against Alpert Holdings concerning the same. (Docket #6 at 7, Docket #6-1 at 33). In November, Alpert Holdings attempted to reopen the garnishment order.

---

[1]*See Orlando Residence Ltd. v. Nelson et al.*, Case No. 13FJ09 (Ozaukee Cnty. Cir. Ct. 2013) *available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2013FJ000009&countyNo=45* (last visited Mar. 3, 2021).

[2]In his oral ruling, Judge Halfenger noted the lack of evidence with regard to Alpert Holdings's and Appellees' relationships with Kenneth Nelson. (*See* Docket #4-2 at 7) ("Neither parties' evidence explained Nelson's relationship with Alpert Holdings or the Alpert's. Alpert Holdings had no employees, though it did utilize independent contractors. Was Nelson one of these independent contractors? Presumably [,] but nothing establishes that."). Judge Halfenger also asked the paramount question as to whether "Alpert Holdings ever [held] funds due Nelson that [Appellant] could have recovered through its garnishment of Alpert Holdings?[,]" adding that the parties had not presented evidence to establish the same. (*Id.* at 8).

(*See* Docket #6-1 at 32). David Alpert declared, under penalty of perjury, that "[t]he Ozaukee Court did agree to reduce the amount of default judgment, but conditioned that reduction upon the payment of $70,000 to Orlando Residence, Ltd. for legal fees." (*Id.* at 131). Because Alpert Holdings was unable to pay that amount, the default judgment remains in effect. (*Id.*) In 2017, Appellant docketed a judgment in the full amount of its garnishment claim, $3,480,440.00, against Alpert Holdings. (Docket #6 at 7, #6-1 at 8). Over a year later, Appellant filed a collection action regarding the garnishment judgment against both Alpert Holdings and David Alpert in Waukesha County.[3] However, after the Appellees filed their Chapter 11 bankruptcy petition, the state court matter was stayed. (Docket #6 at 7, #6-1 at 143).

### 3.3 Federal Bankruptcy Court Proceedings

Appellant filed Claim No. 7 against Appellees in the amount of $3,777,563.08,[4] to which the Appellees objected. Appellees argued that Claim No. 7 should not be allowed "because it is not a claim against [them], and [they] do not owe anything to the Claimant." (Docket #6-1 at 129). Further, David Alpert declared that "[a]s individuals, neither he nor [Pamela Alpert] were holding or in possession of any property or wages of Mr. Nelson or his wife Susan Nelson." (*Id.* at 132). On December 9, 2019,

---

[3]*Orlando Residence, Ltd. v. Alpert Holdings, LLC*, Case No. 18CV1643 (Waukesha Cnty. Ct. 2018) *available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2018CV001643&countyNo=67* (last visited Mar. 3, 2021).

[4]Pursuant to the paperwork related to Claim No. 7, this amount "consists of $3,480,440 in principal, and $297,122.08 in post-judgment interest at the rate of 4.75% from April 26, 2017 until the petition date, or $452.93 per day for 656 days." (Docket #6-1 at 127).

Judge Halfenger held an evidentiary hearing regarding Appellees' objection. (*See* Docket #4-1). The parties agreed that Appellant bore the ultimate burden of proof in establishing the validity of its claim in this case.[5] (*Id.* at 7, #4-2 at 5). Both David Alpert and Alpert Holdings's Certified Public Accountant, Jane Reardon ("Ms. Reardon"), testified at that hearing. Judge Halfenger delivered his oral ruling on the objection on December 13, 2019, during which Judge Halfenger made both findings of fact and conclusions of law. (Docket #4-2 at 5).

During this hearing, Appellant advanced the argument that its claim against Appellees was valid because Alpert Holdings was David Alpert's *alter ego*, such that Judge Halfenger could equitably pierce Alpert Holdings's corporate veil. If Appellant succeeded, then David Alpert's personal assets would be available to satisfy Appellant's judgment against Alpert Holdings. Thus, if Appellant showed that Alpert Holdings was David Alpert's *alter ego* under Wisconsin law, *see infra* Section 4, the bankruptcy court would have likely overruled Appellees' objection to Appellant's Claim No. 7.

In his oral ruling, Judge Halfenger found that "David Alpert repeatedly paid for his personal expenses with credit cards issued to Alpert Holdings." (Docket #4-2 at 13). However, Judge Halfenger concluded that "the evidence showed" that some of those charges were used for the business of Alpert Holdings, such as "paying [for] airfare, greens fees,

---

[5]"Once the objector has produced evidence to overcome the presumption of validity and/or amount [of the claim], the claimant must then produce additional evidence, and must prove the validity of the claim by a preponderance of the evidence. The ultimate burden rests with the creditor, but only after the objector has produced some evidence to rebut the claim." *In re Nejedlo*, 324 B.R. 697, 699 (Bankr. E.D. Wis. 2005).

restaurant bills when David Alpert engaged potential investors in discussions of the business concepts Alpert holdings was developing . . . ." (*Id.* at 9). Notably, Alpert Holdings's payments and credit card charges discussed at the hearing largely occurred in 2013 through, at the latest, November 2014. (*See, e.g.*, Docket #4-1 at 72, 89).

Further, both David Alpert and Ms. Reardon described how they maintained Alpert Holdings's financial records to keep track of business and personal expenses. David Alpert testified, and Ms. Reardon verified, that at the end of each month he would go through Alpert Holdings's charges and identify any personal expenses. Ms. Reardon would then apply them as an expense to David Alpert, not the company. (Docket #4-1 at 112–113; 151–152). Ms. Reardon also stated that it was regular practice for owners of small businesses to use their business's credit card and sort out expenses at the end of each year. (*Id.* at 167). Ms. Reardon testified that although she had been Alpert Holdings's accountant since 2012, the company had not engaged in any business activity after 2014. (*Id.* at 153). The bankruptcy court also found that Alpert Holdings's and David Alpert's respective tax returns "show[ed] a complete and clear distinction between the individual and corporate entity." (Docket #4-2 at 14).

During the evidentiary hearing, David Alpert testified, and Ms. Reardon confirmed, that he had drawn $755,005.60 in total out of Alpert Holdings from the company's inception through December 31, 2014. (#4-1at 57, 164). Ms. Reardon addressed these personal draws, explaining that, when offset by David Alpert's $419,099.73 of contributions to the company, Mr. Alpert's capital account had a negative balance of $338,968.42. (*Id.* at 164–65).

Appellant's counsel also questioned David Alpert regarding a $1.3 million-dollar investment that Josh Kirley ("Mr. Kirley") made to Alpert Holdings in 2013 and 2014. (*Id.* at 44–48). Mr. Kirley paid $500,000.00 of that $1.3 million dollar amount to David Alpert directly and David Alpert did not deposit it into Alpert Holdings's account. (*Id.* at 46). Judge Halfenger found that David Alpert credibly testified that Mr. Kirley paid $500,000.00 to David Alpert in his personal capacity for ten percent of stock in Alpert Holdings. (Docket #4-2 at 19). Therefore, the bankruptcy court determined that David Alpert did not misappropriate funds from Mr. Kirley. (*Id.*)

Additionally, the parties addressed David Alpert's involvement in other business ventures, as well as the potential that he was using Alpert Holdings improperly on behalf of such ventures. For example, Appellant's counsel questioned David Alpert about Alpert Holding paying a loan owned by an entity called "Fusion Commerce." (Docket #4-1 at 61–64). In his oral ruling, Judge Halfenger determined that, because Alpert Holdings acquired Fusion Commerce, including its assets and liabilities, it was "well within the realm of the business judgment rule" that Alpert Holdings would use its funds to pay off a subsidiary's debt. (Docket #4-2 at 21–22).

Appellant's counsel also inquired about payments Alpert Holdings made in 2013 and 2014 on behalf of a company that Appellee Pamela Von Haden-Alpert ("Pamela Alpert") owns, P&D Services, Inc. ("P&D") (Docket #4-1 at 66–69). According to Alpert Holdings's financial statements, P&D has not repaid Alpert Holdings. (*Id.* at 70). Addressing these payments in his ruling, Judge Halfenger concluded that, while the evidence did not show the origin of P&D's debts, such debts were reflected on Alpert Holdings's balance sheet. (Docket #4-2 at 20).

At the hearing, David Alpert testified regarding Alpert Holdings's various projects and intellectual properties. In summary, the bankruptcy court found that although "Alpert Holdings transferred development of some of the concepts to other entities owned by David Alpert . . . [s]everal Alpert Holdings's project concepts remain for it to develop, though David Alpert is not actively pursuing those products." (*Id.* at 9). With regard to the concepts transferred out of Alpert Holdings, Judge Halfenger concluded that "[t]here's nothing obviously surprising or abusive about spinning off those concepts that show promise to separate entities dedicated to those concepts' final development and deployment." (*Id.* at 22).

Importantly, Judge Halfenger highlighted David Alpert's concession that he "abandoned Alpert Holdings after [Appellant] obtained its garnishment default judgment." (*Id.* at 13). Further, he noted that the tax returns show that David Alpert "took more money out of the company than he put in leaving him with negative equity in it." (*Id.*) According to Judge Halfenger, such practices suggested that David Alpert undercapitalized the business. (*Id.*)

Yet, after weighing the evidence against the applicable three-factor test, as laid out in *Consumer's Co-op of Walworth County v. Olsen*, 419 N.W.2d 211 (Wis. 1998), discussed in Section 4, *infra*, Judge Halfenger determined that Appellant failed to meet its burden of proof. Thus, he sustained Appellees' objection to Appellant's claim. It is against this factual and procedural backdrop that the Court turns to Appellant's appeal.

4. **ANALYSIS**

On appeal, Appellant advances that the bankruptcy court erred, as a matter of law, in two principal respects when it concluded that: (1) Alpert Holdings was not David Alpert's "alter ego"; and (2) none of David Alpert's

Page 8 of 17
Case 2:19-cv-01872-JPS   Filed 03/18/21   Page 8 of 17   Document 8

abuses were shown to have any effect on Appellant's rights.[6] (Docket #5 at 22–24).

To establish that Alpert Holdings is David Alpert's "alter ego," warranting the bankruptcy court's piercing of Alpert Holdings's corporate veil, Appellant must prove:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) [s]uch control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory duty or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and (3) [t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Consumer's Co-op*, 419 N.W.2d at 217–18. Because Appellant essentially argues that the bankruptcy court misapplied the facts to the law as to all three of the *Consumer's Co-op* factors, the Court addresses each factor in turn.

**4.1　Alpert Holdings's Separate Existence from David Alpert**

To be sure, David Alpert's treatment of Alpert Holdings, including his use of company funds, was far from ideal. As Appellant points out,

---

[6]Appellant also argues that, as a matter of law, Judge Halfenger erred when he concluded that Appellant cannot be entitled to anything more than it would have been able to collect from Alpert Holdings had Alpert Holdings answered the garnishment complaint as required, as opposed to the full amount of the state court judgment against it. (*See* Docket #5 at 21–22). Because the Court affirms the bankruptcy court's ruling and, thus, Appellees' objection to Appellant's claim remains sustained, there is no reason for this Court to rule on this issue. In other words, because Appellant has not proved that it is entitled to collect from Appellees, it is unnecessary for the Court to rule on what amount Appellant would legally be entitled to if the bankruptcy court had overruled Appellees' objection.

Wisconsin courts have "pierced the corporate veil" in situations where, for example, a corporation's sole stockholder "used the corporate checking account as his personal checking account," and "he seldom took wages." *Wiebke v. Richardson & Sons, Inc.*, 265 N.W.2d 571, 547 (Wis. 1978). Further, in *Wiebke*, the stockholder "did not make regular additions to the corporate account to repay the amounts he withdrew." *Id.* Thus, the Wisconsin Supreme Court disregarded the separateness of the corporation and its stockholder when the plaintiff sought to collect, from the corporation, on a loan that she made to the stockholder. *Id.* at 572–74.

Similarly, in *Olen v. Phelps*, 546 N.W.2d 176, 180 (Wis. Ct. App. 1996), the Wisconsin Court of Appeals affirmed the trial court's conclusion that the defendant's corporation was the defendant's *alter ego* because, *inter alia*, the defendant was the company's "sole shareholder and director, [and] [the company] handled all of its decisions on an informal basis and did not keep minutes of its meetings." Further, the trial court found that the defendant treated the company's funds as his own and "commonly directed [the company's] funds to satisfy both corporate and personal debts." *Id.* The defendant also used company funds to make mortgage payments on both personal and office properties. *Id.* Notably, the plaintiff in *Olen* gave the defendant money to invest on the plaintiff's behalf. *Id.* at 179. The Wisconsin Court of Appeals upheld the trial court's reverse piercing of the corporate veil with regard to defendant's transfer of company property to his daughter "as a gift." *Id.* The trial court found that this conveyance of company property was fraudulent. *Id.* By voiding the transfer and reverse piercing the corporate veil, such company assets would be available to satisfy plaintiff's claims against the defendant in his personal capacity. *Id.* at 180.

Page 10 of 17
Case 2:19-cv-01872-JPS   Filed 03/18/21   Page 10 of 17   Document 8

Lastly, Appellant likens David Alpert's actions to the defendant in *Michels Corp. v. Haub*, 821 N.W.2d 413 (Table), 2012 WL 3764427, at *1 (Wis. Ct. App. Aug. 30, 2012) (unpublished).[7] In *Haub*, the appellate court affirmed the lower court's piercing of the corporate veil to hold the defendant jointly and severally liable for plaintiff's breach of contract action against company Sooner Sales, Inc. ("Sooner"). *Id.* The circuit court relied on the undisputed facts that the defendant was the company's president, sole shareholder, and only full-time employee. The Court determined that the defendant's treatment of the company's assets as his own and his holding himself out as being personally liable for Sooner's debts suggested the defendant's control over Sooner. *Id.* at *4. Notwithstanding the defendant's argument that there were some indications of "separateness" between him and Sooner (e.g., Sooner's Articles of Incorporation, bylaws, and preparation of a tax return independent of the defendant's tax return), the appellate court found that such documents said more about Sooner's form rather than its reality. *Id.* at *5. Ultimately, the Court of Appeals found that piercing the corporate veil was proper. Thus, the defendant could be held jointly and severally liable, in his personal capacity, for Sooner's breach of contract with the plaintiff.

---

[7]Appellees note Appellant's reliance on an unpublished state law opinion. (*See, e.g.*, Docket #6 at 20–21). Pursuant to Civil Local Rule 7(j)(1) "this Court does not prohibit the citation of unreported or non-precedential opinions, decisions, orders, judgments, or other written depositions." Further, because the Wisconsin Court of Appeals issued *Haub* after July 1, 2009, it may be cited for persuasive value. Wis. Stat. § 809.23(3)(b) (2020). To the extent this Court's decision references an unpublished decision, *see infra* Section 4.3, that is not binding on Wisconsin Courts, (i.e., issued before July 1, 2009), such decisions "remain[] a stronger indication of Wisconsin law than prior decisions from this district attempting to divine how a Wisconsin court would rule." *Edgenet, Inc. v. GS1 U.S., Inc.*, Case No. 09-CV-65, 2011 WL 2551702, at *13 n.5 (E.D. Wis. June 27, 2011).

The Court notes that some of the aforementioned factors are undoubtedly present with regard to David Alpert's treatment of Alpert Holdings. However, because Appellant cannot prove the second and third elements of the *Consumer's Co-op* test, the Court will not engage in *de novo* review[8] of this first element. *See Consumer's Co-op*, 419 N.W.2d at 218 ("Hence, the absence of any one of these elements prevents piercing the corporate veil.") (internal quotations and citation omitted).

### 4.2 David Alpert Did Not Use Such Control to Perpetuate Violation of Appellant's Rights

Pursuant to *Consumer's Co-op*, "it is apparent that . . . control, absent a showing of injustice, would not justify exception to the general rule of corporate nonliability . . . ." *Id. See also Wiebke*, 265 N.W.2d at 573 ("This court has said that if . . . applying the corporate fiction would . . . defeat some strong equitable claim, the fiction is disregarded and the transaction is considered as one of the individual himself or of the corporation, whichever will prevent the inequitable result.") (internal quotations and citation omitted) (omissions in original). Appellant argues that David Alpert's various abuses of Alpert Holdings affected Appellant because

---

[8]Upon its review of Appellant's brief, the Court finds that Appellant attempts to challenge some of Judge Halfenger's findings of fact, albeit indirectly. (*See, e.g.*, Docket #5 at 18–20) ("The evidence presented at trial on December 9, 2019, [sic] demonstrated that the Debtor, the sole owner and manager of Alpert Holdings: misappropriated $500,000 of a $1,300,000 investment Joshua Kirley made in Alpert Holdings; [and] transferred to Alpert Holdings a liability of $289,599 that Fusion Commerce, LLC owed to a third-party vendor, Wild Impact Marketing.") The bankruptcy court did not make the aforementioned findings of fact, and on its face, Appellant's brief does not ask for a review of Judge Halfenger's findings of fact. Regardless, to the extent Appellant is challenging Judge Halfenger's findings of fact, it is unlikely that any such findings were clearly erroneous.

Alpert Holdings no longer had any assets to satisfy Appellant's judgment against it. (Docket #5 at 23).

Appellant recognizes that some of these abuses by David Alpert took place prior to Appellant's judgment against Alpert Holdings. After all, Appellant's counsel questioned David Alpert regarding credit card charges, loan payments, checks, and draws that occurred in 2013 and 2014. (*See, e.g.*, Docket #4-1 at 73–91). Further, Appellant's allegations that David Alpert has continued to harm Appellant by failing to develop Alpert Holdings's intellectual property or by doing consulting work via a different limited liability company and generating an income for that company are without merit. The Court agrees with Judge Halfenger's determination that David Alpert cannot be forced to do work through a particular entity or work on specific projects for Alpert Holdings so as to generate an income to pay off Appellant. *See Olen* 546 N.W.2d at 181–82 (concluding that the company's future profits were "dependent on too many future events" to ultimately be subject to garnishment without further process). Notably, Appellant does not point this Court to any Wisconsin case law that supports Appellant's proposition.

Perhaps the most damning alleged abuse is David Alpert's statement that he "abandoned" Alpert Holdings after Appellant's judgment was docketed against it. However, Judge Halfenger found David Alpert's testimony that Alpert Holdings did not have the capital to continue furthering its business concepts to be credible. (Docket #4-2 at 15–16). Judge Halfenger's determination is a "finding of fact" and thus, this Court reviews it for clear error. The Court does not find Judge Halfenger's finding to be clearly erroneous.

As Appellees point out, the facts in this case can be distinguished from *Wiebke*, *Olen*, and *Haub* as to this second factor. In *Wiebke*, 265 N.W.2d at 574, the court determined that allowing the sole stockholder to hide behind defendant's corporate form so as to evade the plaintiff's collection efforts with regard to a loan she made to the sole stockholder would have been an injustice. Similarly, in *Olen*, 546 N.W.2d at 181, the appellate court upheld the trial court's determination that the defendant fraudulently conveyed property. By reverse piercing the corporate veil to get to the defendant, the asset would be available for future garnishment by the plaintiff, who trusted the defendant with his money. *Id.* Lastly, in *Haub*, 2012 WL 3764427, at *1, by piercing the corporate veil to get to the defendant in his personal capacity, the defendant would have to answer for misappropriating company funds. Such misappropriation ultimately led to the company's breach of its contract with the plaintiff. *Id.*

In each of the aforementioned examples, there is a clear legal duty or right between the plaintiff and the defendant trying to utilize a corporate veil to the plaintiff's disadvantage. Here, no such legal right or duty exists. While the Court, like Judge Halfenger, recognizes Appellant has a state court judgment docketed against Alpert Holdings, this judgment did not stem from Alpert Holdings's relationship with Appellant. Alpert Holdings and Appellant do not have a relationship independent of Appellant's original judgment against Kenneth Nelson. There is little-to-no evidence of Alpert Holdings's relationship with Kenneth Nelson or that Alpert Holdings owes funds to Kenneth Nelson that would be subject to garnishment. Thus, Appellant has not shown that (1) Alpert Holdings had an independent legal duty to Appellant, (2) David Alpert was using Alpert Holdings to violate such legal duty, and (3) the

only equitable means for the Court to right that violation would be to pierce Alpert Holdings's corporate veil. For the above reasons, the Court finds that Appellant has failed to satisfy the second prong of the *Consumer's Co-op* test.

### 4.3 David Alpert's Control and Breach of Duty Did Not Proximately Cause Appellant's Injuries

The Court briefly addresses the third factor of the *Consumer's Co-op* test and Appellant's failure to satisfy the same. Assuming that Appellant satisfied prongs one and two, then David Alpert's control of Alpert Holdings and Alpert Holdings's violation of a duty to Appellant must have proximately caused Appellant's injury or the unjust loss it complains of.

At the evidentiary hearing, Appellant argued that, among other things, David Alpert's failure to capitalize Alpert Holdings proximately caused Appellant's injury. (*See* Docket #4-1 at 219–20) ("And then prong three, the harm is that because it was inadequately capitalized, the company does not have assets to pay its bills.") Appellant relied on Alpert Holdings's tax returns and the operating agreement for support. (*Id.*).

Wisconsin courts consider undercapitalization relevant to the third element. *Lunke v. Village of Bangor*, 617 N.W.2d 907 (Table), 2000 WL 959498, at *7 (Wis. Ct. App. July 6, 2000) (unpublished). *See also Consumer's Co-op*, 419 N.W.2d at 218 ("[W]hereas inadequate capitalization is primarily significant with respect to whether control has been exercised in such a manner as to result in injustice."). Undercapitalization is "measured by the nature and magnitude of the corporate undertaking." *Ruppa v. Am. States Ins. Co.*, 284 N.W.2d 318, 324 (Wis. 1979) (citation omitted). Ideally, adequate capitalization "is to be measured as of the time of formation of the corporation." *Consumer's Co-op*, 419 N.W. at 218. However, "[a] corporation

Page 15 of 17
Case 2:19-cv-01872-JPS   Filed 03/18/21   Page 15 of 17   Document 8

that was adequately capitalized when formed but which subsequently suffers financial reverses is not undercapitalized." *Id.* (internal quotations and citation omitted). Further, "a court's examination of the adequacy of capitalization may inquire beyond the capitalization of the corporation" if and when "the corporation distinctly changes the nature or magnitude of its business." *Id.* at 219.

Certainly, the fact that David Alpert did not initially capitalize Alpert Holdings does not bode well. Yet, Judge Halfenger found that David Alpert credibly testified "that before [Appellant] obtained its judgment against Alpert Holdings, Alpert Holdings was able to pay its debts and expenses over time . . . ." (Docket #4-2 at 15). This Court agrees with Judge Halfenger's conclusion that the fact that Alpert Holdings's capital was not ultimately able to satisfy Appellant's multi-million-dollar judgment, "one may not properly infer" that Alpert Holdings's capital, throughout the duration of the business, was not reasonably adequate for its prospective liabilities nor its reasonable risk of loss. *Id.*

Further, satisfaction of the third prong does not hinge solely on a lack of initial capitalization. This lack of initial capitalization, or some other abusive behavior, must have proximately caused Appellant's unjust loss. Assuming that Appellant satisfied the "control" factor, and that Alpert Holdings had some independent legal right or duty as to Appellant, Appellant has not shown that its unjust loss of almost four million dollars is proximately linked to Alpert Holdings's behavior, much less Appellees. For this reason, the Court also finds that Appellant has not satisfied the third prong of the *Consumer's Co-op* test.

**5.  CONCLUSION**

Appellant failed to prove that Alpert Holdings is David Alpert's *alter ego* under Wisconsin law. Therefore, this Court affirms the bankruptcy court's ruling, and Appellees' objection to Appellant's Claim No. 7 remains sustained. The Court will dismiss Appellant's appeal with prejudice.

Accordingly,

**IT IS ORDERED** that the decision of the bankruptcy court in this matter be and the same is hereby **AFFIRMED**; and

**IT IS FURTHER ORDERED** that this matter be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2021.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge